IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY, | ) ) ) | Civil Action No. 15-998 Judge Cathy Bissoon |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AIM LEASING COMPANY d/b/a AIM NATIONALEASE and GENUINE PARTS COMPANY d/b/a NAPA AUTO PARTS, | ) ) ) ) | |
| Defendants. | ) | |

### BRIEF IN SUPPORT OF MOTION TO DISMISS

NOW, comes AIM Leasing Company d/b/a AIM NationaLease ("AIM"), by and through its attorneys, Dapper, Baldasare, Benson, Behling & Kane, P.C., and files the following Brief in Support of Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.      INTRODUCTION

In this declaratory judgment action in which an insurer seeks a declaration that it has no duty of coverage relative to its insureds with respect to a lawsuit filed in Pennsylvania state court in relation to a fatal Pennsylvania automobile accident, the Court should dismiss the Complaint on the bases of *res judicata* and collateral estoppel, where a Pennsylvania state court has already issued a finding of a duty of coverage in a declaratory judgment action involving the same parties and issues and which is a full and final judgment on the merits.

## II.      BACKGROUND

The underlying lawsuit filed in Washington County, Pennsylvania ("Underlying Tort Action") arises out of a September 9, 2009 fatal automobile accident that occurred in Washington

County, Pennsylvania ("Accident") and involved a vehicle owned by Genuine Parts Company ("Genuine Parts").  (See Compl. at ¶ 9.)

Pursuant to a Vehicle Maintenance Agreement, AIM performed maintenance work on the vehicle owned by Genuine Parts and which was involved in the Accident.  (See Compl. at ¶ 11.)

Genuine Parts joined AIM as an additional defendant to the Underlying Tort Action regarding the Accident.  (See Compl. at ¶ 10.)

The Vehicle Maintenance Agreement required Genuine Parts to obtain automobile liability insurance that conferred additional insured status to AIM in connection with losses such as that involved in the Accident and which is the subject of the Underlying Tort Action.  (See Compl. at ¶ 12.)

Discover Property & Casualty Insurance Company ("Discover") issued an automobile liability insurance policy to Genuine Parts, effective from November 1, 2009 to November 1, 2010 ("Discover Policy").  (See Compl. at ¶ 13 and Compl. at Ex. A.)

In 2012, AIM initiated a declaratory judgment action against Discover and Genuine Parts in the Court of Common Pleas of Washington County, Pennsylvania ("PA Coverage Action"), seeking a declaration confirming AIM's additional insured status under the Discover Policy and establishing Discover's duty of coverage relative to AIM with respect to the damages at issue in the Underlying Tort Action.  (See Compl. at ¶ 15 and Compl. at Ex. B.)  Discover filed a cross-motion for summary judgment in the PA Coverage Action, seeking a declaration that it owed no duty of coverage to AIM as an additional insured under the Discover Policy on numerous bases. (See Ex. 1.) The court in the PA Coverage Action explained that the issue before it was "whether Discover owes a duty of coverage to AIM as an additional insured under the insurance policy in question" in connection with the Underlying Tort Action and granted AIM's motion for summary

judgment in finding the same.  (See Compl. at Ex. B.)[1]  Although Discover filed an appeal to the Pennsylvania Superior Court with respect to the ruling in the PA Coverage Action that Discover owes coverage to AIM, Discover filed a Praecipe for Discontinuance in connection with its appeal and the Pennsylvania Superior Court accordingly issued a Certification of Discontinuance to the trial court, such that the Pennsylvania Superior Court's docket is marked "closed" and the judgment in the PA Coverage Action is final. (See Ex. 2.)

Notwithstanding the final judgment in the PA Coverage Action that Discover owes a duty of coverage to AIM under the Discover Policy with respect to the Underlying Tort Action, Discover initiated the instant declaratory judgment action on September 22, 2014 in the United States District Court for the Northern District of Georgia seeking a declaration that it does not have a duty of coverage relative to AIM with respect to the damages at issue in the Underlying Tort Action.  (See Compl. at ad danum clause, subparagraph (a).)  On October 23, 2014, AIM filed a Rule 12(b)(6) Motion to Dismiss in the Northern District of Georgia.  On July 31, 2015, the Northern District of Georgia transferred the instant action to the Western District of Pennsylvania. AIM now re-files its Motion to Dismiss.

### III.     STANDARD OF REVIEW

Although res judicata is an affirmative defense, the doctrine may be raised in a Rule 12(b)(6) motion.  Tyler v. O'Neill, 52 F. Supp.2d 471 (E.D. Pa. 1999) (citing Rycoline Products, Inc. v. C&W Unlimited, 109 F.3d 883 (3d Cir. 1997); Mack v. Municipality of Penn Hills, 547 F.

---

[1] Earlier in 2012, AIM had initiated a declaratory judgment action against Discover in the United States District Court for the Western District of Pennsylvania at Case No. 2:12-cv-00480-CB, also seeking a declaration confirming AIM's additional insured status under the Discover Policy and establishing Discover's duty to provide coverage to AIM with respect to the damages at issue in the Underlying Tort Action. The district court entered an Order staying that action pending resolution of the Underlying Tort Action.  The Underlying Tort Action remains pending and is on appeal to the Pennsylvania Superior Court. (See Compl. at ¶ 14.)

Supp. 863, n. 9 (W.D. Pa. 1992)).   In resolving a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account.  Tyler, 52 F. Supp.2d at 474 (citing Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808 (3d Cir. 1990)).

## IV.    ARGUMENT

### A.    The Complaint Should Be Dismissed Pursuant to the Doctrine of *Res Judicata* Based on the Final Judgment Entered in the Pennsylvania Coverage Action.

The doctrine of *res judicata*, or claim preclusion, is intended to avoid piecemeal litigation of claims arising from the same events and to ensure the finality of judgments.  Churchill v. Star Enters., 183 F.3d 184 (3d Cir. 1999); Sendi v. NCR Comten, Inc., 624 F. Supp. 1205 (E.D. Pa. 1986).  "[A] final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action."  Churchill, 183 F.3d at 194.

The application of *res judicata* requires a defendant to demonstrate three elements:

    (1)    A final judgment on the merits in a prior suit involving,

    (2)    the same parties or their privies, and

    (3)    a subsequent suit based on the same cause of action.

Lubrizol Corp. v. Exxon Corp., 929 F.2d 960 (3d Cir. 1991) (citation omitted).  "If these three factors are present, a claim that was or could have been raised previously must be dismissed as precluded."  CoreStates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187 (3d Cir. 1999).

Here, with respect to the first two elements, it is undisputed that the court in the PA Coverage Action entered summary judgment in favor of AIM, that the appeal to the Pennsylvania Superior Court has been discontinued such that the judgment issued in favor of AIM in the PA

4

Coverage Action is a final judgment, and that the parties in the PA Coverage Action are identical to those in the instant declaratory judgment action—that is, Discover, AIM and Genuine Parts.

With regard to the third element, the Third Circuit has explained that in determining whether two suits are based on the same cause of action, the court is to take a broad view, evaluating whether there is "essential similarity of the underlying events giving rise to the various legal claims." CoreStates Bank, 176 F.3d at 194 (citations omitted). The Third Circuit has observed that courts "[do] not apply this conceptual test mechanically, [but] focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out [of] the same occurrence in a single suit." Sheridan v. NGK Metals Corp., 609 F.3d 239 (3d Cir. 2010). In conducting this inquiry, the court considers "whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same. Lubrizol, 929 F.2d at 963 (citations omitted).

Here, the PA Coverage Action and the instant declaratory judgment action clearly share not only an "essential similarity" of underlying events giving rise to the claims at issue, but a virtual identity of facts. Stripped down to its essence, both declaratory judgment actions involve AIM's right to insurance coverage under the Discover Policy and Discover's duty to provide that coverage under the Policy. Indeed, both cases arise out of the same nucleus of operative fact and the same factual predicate—that is, Discover's duty of coverage owed to AIM as an additional insured under the Discover Policy in relation to the Underlying Tort Action. The primary rights and duties of both AIM and Discover are exactly the same in each case and each case involves the exact same evidence and documentation, namely information pertaining to the Underlying Tort Action and the Discover Policy.

In particular, on October 25, 2010, Genuine Parts voluntarily settled the underlying wrongful death action for $1,050,000 and sought reimbursement from AIM in this amount within the context of its contribution and indemnity action. (See Compl. at ¶ 14.) At this point—i.e., in 2010—it was clearly and unquestionably established that AIM's potential liability (without factoring in interest, costs, etc.) with respect to the Accident would not exceed $1,050,000 and would not approximate $5 million. (Id. at ¶ 15.) Accordingly, when the PA Coverage Action was filed two years later on October 23, 2012, Discover knew that the total potential liability exposure under the Discover policy would not exceed the policy's $5 million self-funded retention ("SFR").

As Discover states in its Complaint, the crux of the PA Coverage Action was AIM's request for a judicial declaration that Discover owes coverage to AIM with respect to the Underlying Tort Action under the Discover Policy. (Id. at ¶ 15.) In response to AIM's position in the PA Coverage Action, Discover filed a cross-motion for summary judgment seeking a determination that it owed no coverage to AIM such that any particular coverage issues relating to that determination were raised—or could have been raised—in the prior PA Coverage Action.

It is anticipated that Discover may attempt to confuse the issue by stating that the "sole issue litigated" in the PA Coverage Action was whether the Vehicle Maintenance Agreement between AIM and Genuine Parts constituted an "insured contract" under the Discover Policy. But the whole purpose behind Discover's argument in the prior PA Coverage Action that the Vehicle Maintenance Agreement was not an "insured contract" was to avoid providing coverage to AIM under the Policy with respect to the Accident. That is the very same result that it seeks here.

For example, in the PA Coverage Action, Discover argued in its cross-motion for summary judgment seeking a declaration of no coverage that the so-called "insured contract" issue "is the lynchpin to purported coverage under the Discover policy" and that "[t]he *sin qua non* for the

trigger of coverage under the 'insured contract' coverage of the Discover policy was an enforceable obligation by Genuine [Parts] to indemnify AIM."  (See Ex. 1 at pp. 17 and 18 of 25.)  Judge DiSalle, in the PA Coverage Action, recognizing the clear distinction between an agreement to provide insurance and an agreement to indemnify, rejected Discover's "no coverage" argument on this basis, stating that even where the indemnity clause in question is determined to be invalid and unenforceable, the validity of an insurance provision of a severable contract is not affected" such that AIM is afforded coverage under the Discover Policy.  (See Compl. at Ex. B.)  That Discover chose to move for summary judgment in the PA Coverage Action on this narrow basis—without preserving any other coverage defense—did not change the fundamental nature of its claim of "no coverage" in the PA Coverage Action.

It is to be sure, in litigating the coverage issue in Pennsylvania, Discover could have—and indeed should have—raised its array of coverage defenses and argued that should coverage be found for AIM under the Discover Policy with respect to the Accident, then in the alternative, the Policy's SFR applies to AIM. This is not an extraordinary approach in declaratory judgment actions involving the availability of insurance coverage with respect to a single loss arising out of a single event.[2]

It is axiomatic that *res judicata* pertains not only to claims that were raised in the prior action, but also to clams that "could have been raised previously." CoreStates Bank, 176 F.3d at 194.  Such is the case here with respect to the SFR, particularly given that Discover knew from the

---

[2] Such alternative coverage arguments must be pled and preserved in coverage litigation or may be otherwise waived where, as in the PA Coverage Action, a final declaratory judgment establishing a coverage obligation is rendered. See Wright, et. al. 18A Fed. Prac. & Proc. Juris. § 4402 (2d. ed.) (explaining that *res judicata* "'treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action[,]'" and that "the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial").

outset of the PA Coverage Action that AIM's maximum potential liability fell well below the $5 million SFR.[3]  Consequently, it is beyond cavil that Discover's SFR defense "could have been" raised in the earlier proceeding such that Discover had a full and fair opportunity to litigate the same for the purposes of *res judicata*.

The sole purpose of Discover's desire to apply the Policy's SFR to AIM is to support its ultimate argument of no payment obligation by Discover under the Policy given that AIM's maximum liability will never approximate the Policy's $5 million SFR.  As such, it is clear that Discover was required to "present all claims arising out [of] the same occurrence in a single suit," and the defect resulting from Discover's failure to raise its SFR coverage defense in the prior coverage action cannot be cured through any attempt by Discover to repackage the fundamental question at issue.

To permit Discover to trudge forward with this identical declaratory judgment action would be anathema to the central purpose of the doctrine of *res judicata*—i.e., the avoidance of "piecemeal litigation."  The instant matter is a living and breathing example of piecemeal litigation. In effect, Discover desires to compartmentalize its coverage defenses, first asking the Pennsylvania state court to relieve it of its coverage obligations to AIM on one basis, and then asking this Court to find no coverage on a new-fangled basis.  Taking Discover's unorthodox litigation approach to its conclusion, if Discover is unsuccessful with respect to the SFR defense relative to AIM on this try—but feels that a policy exclusion may allow it to escape its responsibilities to AIM—Discover could later file a different declaratory judgment action in a different court of a different jurisdiction and attempt to litigate another aspect of the Discover Policy with a clean slate, hoping that it will

---

[3]  This fact alone belies any proclamation by Discover that to raise the $5 million SFR coverage defense in the prior coverage action would have been premature or not "ripe."

eventually be able to avoid coverage to AIM in connection with the Accident.  Such an absurd pattern could theoretically go on *ad infinitum* and must not be permitted.

Accordingly, the doctrine of *res judicata* dictates that the Complaint in the instant declaratory judgment action should be dismissed as to AIM.

**B.**     **The Complaint Should Be Dismissed Pursuant to the Doctrine of Collateral Estoppel Based on the Final Judgment Entered in the <u>Pennsylvania Coverage Action</u>.**

Collateral estoppel, also referred to as issue preclusion, specifically bars re-litigation of an issue that was conclusively determined in a prior adjudication and that was essential to the original judgment.  <u>Arlington Indus., Inc. v. Bridgeport Fittings, Inc.</u>, 2015 WL 2131626 (3d Cir. May 7, 2015) (citing <u>Witkowski v. Welch</u>, 173 F.3d 192 (3d Cir. 1999)).

The doctrine of collateral estoppel is based upon the policy that "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise."  <u>Dici v. Commonwealth of Pa.</u>, 91 F.3d 542 (3d Cir. 1996) (quoting <u>Astoria Fed. Sav. & Loan Ass'n v. Solimino</u>, 501 U.S. 104 (1991)).

By foreclosing subsequent disputes over issues on which a court has ruled, collateral estoppel promotes fairness and certainty while "'conserving judicial resources…and fostering reliance on judicial action by minimizing the possibility of inconsistent verdicts.'"  <u>Arlington Indus.</u>, 2015 WL 2131626, at *5 (quoting <u>B&B Hardware, Inc. v. Hargis Indus., Inc.</u>, ___U.S.___, 135 S. Ct. 1293 (2015)).

A subsequent action is precluded by the doctrine of collateral estoppel where the following elements are satisfied:

(1)     The issue sought to be precluded is the same as that involved in the prior action;

(2)     the issue is actually litigated;

(3)     it was determined by a final and valid judgment; and

(4)     the determination was essential to the prior judgment.

Arlington Indus., 2015 WL 2131626, at *6 (citing Peloro v. United States, 488 F.3d 163 (3d Cir. 2007)).

Here, as noted above, the parties to the instant declaratory judgment action and the PA Coverage Action are identical.  Additionally, the issues in both declaratory judgment actions are the same (i.e., Discover's duty of coverage to AIM under the Discover Policy with respect to the Underlying Tort Action), that issue was actually litigated by way of cross-motions for summary judgment, and final judgment was entered as to that issue in the PA Coverage Action.  The determination of Discover's duty of coverage relative to AIM was the central question involved in the PA Coverage Action such that the determination of this issue was essential to the prior declaratory judgment in that case.  Lastly, Discover was represented by competent counsel in the PA Coverage Action and cross-moved for summary judgment, demonstrating that both Discover and AIM had a full and fair opportunity to litigate Discover's duty of coverage to AIM under the Discover Policy.  Discover "deserves no rematch" on the identical substantive issue of its obligation of coverage to AIM with respect to the Underlying Tort Action.

As such, because the central issue involved in the instant declaratory judgment action has already been decided in the prior PA Coverage Action, Discover is barred from re-litigating the same pursuant to the doctrine of collateral estoppel, warranting dismissal of the Complaint as to AIM.

V.      **CONCLUSION**

For the foregoing reasons, AIM respectfully requests that this Honorable Court enter an Order granting its Motion and dismissing the Complaint for Declaratory Judgment as to AIM, with prejudice.

Respectfully submitted,

DAPPER, BALDASARE,
BENSON, BEHLING & KANE, P.C.

By /s/  Christopher M. Jacobs
        Christopher M. Jacobs
        PA ID #89092
        444 Liberty Avenue, 10th Floor
        Pittsburgh, PA  15222

        Attorneys for AIM Leasing Company d/b/a
        AIM NationaLease

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that on the 20th day of October, 2015, the within **BRIEF IN SUPPORT OF MOTION TO DISMISS** was filed electronically.  Notice of this filing will be sent to all Parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

By     /s/  Christopher M. Jacobs
                             Christopher M. Jacobs