IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DISCOVER PROPERTY & CASUALTY | ) | Civil Action No. 15-998 |
| INSURANCE COMPANY, | ) | Judge Cathy Bissoon |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AIM LEASING COMPANY d/b/a AIM | ) | |
| NATIONALEASE and GENUINE PARTS | ) | |
| COMPANY d/b/a NAPA AUTO PARTS | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF PLAINTIFF DISCOVER PROPERTY & CASUALTY
INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO
DEFENDANT GENUINE PARTS COMPANY'S MOTION TO DISMISS**

COMES NOW Discover Property & Casualty Insurance Company (hereinafter "Discover") plaintiff in the above-styled action and, pursuant to Federal Rule of Civil Procedure 12(b)(6), files this Brief in Opposition to defendant Genuine Parts Company d/b/a NAPA Auto Parts (hereinafter "NAPA") Motion to Dismiss. For the following reasons, Discover requests that NAPA's Motion to Dismiss be denied.

## I. *INTRODUCTION*

### A. Nature for the Action

Discover seeks a declaratory judgment that:

(1) it does not owe indemnity to AIM Leasing Company d/b/a AIM Nationalease

("AIM") or NAPA because neither insured has paid the self-funded retention ("SFR")

that, under the terms and conditions of the Discover Policy ("Policy" or "Discover

Policy"), a "fronting" policy of insurance[1], must be paid to trigger Discover's obligation to indemnify any insured for amounts in excess of the SFR[2] and/or

(2)   because NAPA also entered into an Indemnity Agreement[3] that required NAPA to indemnify Discover for any payments made by Discover under the Policy up to the SFR limits of $5,000,000,  NAPA must indemnify Discover for any payments Discover makes to  satisfy the  judgment obtained by NAPA against AIM.  (Amended Complaint ¶¶ 32-39.)

 Such a statement of the issues may well seem circuitous, i.e., NAPA being required to indemnify Discover for indemnity it paid to AIM who in turn paid that same money to NAPA in order to satisfy the judgment NAPA obtained against AIM.  Yet that circle of Entity #1 paying Entity #2 who then pays Entity #3 who then returns that same money to Entity #1 is, in fact, the result compelled by the terms of the contracts at issue and what is being litigated herein.

This "circle" arose out of a legal strategy developed by NAPA in order to avoid  what was likely to be a substantial loss  in connection with a wrongful death suit arising out of the negligence of the driver of a NAPA vehicle. NAPA concluded that suit by paying a substantial settlement to the decedent's estate and then seeking contribution and indemnity from AIM..

---

[1] Policies written with a SFR equal to the limits of liability are sometimes referred to as  "fronting policies." "The  . . . term 'fronting' refers to situations in which the business pays a greatly discounted premium to an insurance company with insurance licensing and filing capabilities in particular states in exchange for an insurance policy that complies with the financial-responsibility laws of each state in which the business is required to maintain proof of financial responsibility" " . . . [p]ractically speaking, the business is renting an insurance company's licensing and filing capabilities, which is often economically advantageous for the business. In typical fronting policies, the deductible matches the limit of liability, such that the business bears the entire risk of loss" _White v. Insurance Co. of State of Pa.,_ 405 F3d 455, 457 (6th Cir. 2005)[internal citation and internal quotation marks omitted] .

[2] For the Court's convenience, a copy of the self-funded retention endorsement to the Policy, previously filed as part of Exhibit "A" to Discover's Amended Complaint, is attached as Exhibit "1."

[3] For the Court's convenience, a copy of the Indemnity Agreement previously filed as Exhibit "D" to Discover's Amended Complaint, is attached as Exhibit "2."

NAPA planned to recoup from AIM's insurer, HARCO, a substantial portion of that payment in "recognition" of AIM's joint liability for failing properly to maintain the NAPA vehicle involved in the motor vehicle accident.  Unfortunately for NAPA, it neglected to consider that it had entered into a vehicle maintenance agreement ("VMA") with AIM that required that AIM be named an additional insured on *NAPA's insurance policy,* a policy issued by Discover.

In pursuing this strategy, NAPA threw into the mix of possible insurance not just AIM's liability policy issued by HARCO, but also the Discover Policy with its Blanket Additional Insured Endorsement and $5,000,000 SFR.  It also potentially "activated" Leg #3 of the circle, the Indemnity Agreement requiring NAPA to indemnify Discover should Discover ever be required to pay any loss up to $5,000,000 under the Policy, an obligation NAPA had collateralized with a multimillion dollar letter of credit held by Discover. A further miscalculation by NAPA was its failure to consider that under the circumstances, the "other insurance" provisions of AIM's HARCO policy and the Discover policy would render AIM's HARCO policy "excess."

### B. Summary of the Policy

The Policy issued to NAPA, and under which AIM became an additional insured as a result of the VMA executed by AIM and NAPA, included a SFR endorsement that required that the *insured* first make payment of $5,000,000 for any loss insured under the Policy before Discover's indemnity obligations could be triggered for covered losses in excess of the SFR limit:

> damages . . . caused in any one "accident" that would otherwise be payable under LIABILITY COVERAGE will be reduced by the self-funded retention [$5,000,000] applicable to such coverage, . . . The Per "Accident" Limit of Insurance applicable to such coverage will be reduced by the amount of

damages…… payable under the policy, both within, and in excess of, such self-funded retention.

 (Amended Complaint ¶¶ 11-13, 32-36.) To this day that SFR has not been exhausted by NAPA or AIM.  Moreover and as below noted at pp.10 to 12, NAPA agreed to indemnify Discover to the extent Discover was required to make any payments within the SFR limit, as also clearly and precisely set forth in a separate Indemnity Agreement between Discover and NAPA.

Because of NAPA's claims against AIM in connection with the motor vehicle death case, AIM filed suit in state court against Discover and NAPA seeking, among other things, a declaration that it was an additional insured under the Policy. AIM received the declaration it sought. (*See* Exhibit "3," Opinion and Order of Judge John F. DiSalle.)[4]  Discover does not dispute the state court's finding or  seek to re-litigate that issue or any other issue that was required to be addressed in that suit. However, Discover does seek a declaration that it does not owe indemnity to AIM because although AIM is an additional insured, a condition precedent to Discover's indemnity obligations under the Policy, namely the proper exhaustion of  the SFR, has not been satisfied.

As to NAPA, the Policy's SFR Endorsement requires NAPA exhaust the $5,000,000 SFR limit for any single loss before Discover has any obligation to make any indemnity payments to any insured including AIM, an additional insured on the Policy. (Amended Complaint ¶¶ 32-39.) To the extent Discover nonetheless makes any indemnity payments to AIM up to $5,000,000, Discover is entitled to indemnity from NAPA pursuant to the Indemnity Agreement. (Amended

---

[4] The declaratory judgment action before Judge DiSalle focused on: 1) the indemnity portion of the VMA between AIM and NAPA and NAPA's obligation to name AIM as an additional insured; and 2) whether AIM, pursuant to the VMA, qualified as an additional insured on the Policy pursuant to the "insured contract" provision in the Blanket Additional Insured Endorsement.

Complaint at Exhibit "D," Exhibits "1" and "2" herein) The issue of AIM and NAPA's SFR obligations and NAPA's indemnity obligation was not even ripe for adjudication until AIM received its declaration of coverage as an additional insured under the Policy.

Before any court could consider NAPA's obligations under the SFR and separate Indemnity Agreement, assuming NAPA disputed its obligation under the SFR and Indemnity Agreement, several determinations were required:

- AIM's status as an additional insured had to either be admitted by Discover (which it did) or judicially determined;

- a judicial determination was required as to the scope of that coverage ( i.e., what coverages were applicable taking into consideration  the terms, conditions and exclusions in the Policy in the context of the VMA); and

- NAPA was required to obtain a judgment against AIM for contribution or indemnity with regard to the payment made by NAPA to settle the motor vehicle death case.

Only after AIM succeeded in obtaining the judgment entered by Judge DiSalle *and* NAPA obtained its judgment against AIM, was the application of the SFR and the Indemnity Agreement triggered and, if challenged,  ripe for judicial determination.  Prior to those events, the invocation of the Discover SFR and Indemnity Agreement would have been premature, inchoate and non-justiciable.

## II. *BACKGROUND*

Discover initially commenced this lawsuit to obtain a declaration as to a single issue. That issue, as stated in Discover's first Complaint, is whether the conditions established by the Policy, specifically the SFR Endorsement that required payment of $5,000,000 by an insured,

have been satisfied in order to trigger any obligation on the part of Discover to make any payment with respect to AIM as an additional insured for the underlying loss. (Amended Complaint ¶¶ 24-25.)

The issue in this case is **not** whether AIM is an additional insured, but simply the application of the terms and conditions of the Policy that require an insured under the Policy to pay the $5,000,000 SFR before Discover has any indemnification obligation to any insured including AIM or NAPA.

AIM and NAPA filed Motions to Dismiss the original Complaint. Discover filed an Amended Complaint adding a second count, seeking a declaration that Discover's Indemnity Agreement with NAPA requires NAPA to indemnify Discover should Discover be required to pay the judgment obtained by NAPA against AIM. (Amended Complaint ¶¶ 37-39.)  In light of the additional count, AIM chose not to re-file its Motion to Dismiss and, instead, has filed an Answer to Discover's Amended Complaint.[5] NAPA, however, has re-filed its initial Motion to Dismiss, and in doing so has elected to ignore the second count, the Indemnity Agreement, that Discover has raised for the first time before any court.

**A.  The Walters Action**

On September 9, 2009, Cynthia L. Walters' husband, Roger W. Walters, was killed in a three-vehicle accident that occurred in Union Township, Washington County, Pennsylvania. On November 27, 2009, Walters filed a wrongful death and survival lawsuit ("Walters Action") against NAPA and Nicholas Jackson, an employee of NAPA, who was operating a NAPA Freightliner truck within the course and scope of his employment when the accident occurred.

---

[5] Although AIM filed an answer it did not waive its defense, previously asserted in its motion to dismiss, that as an additional insured, the SFR does not apply to it.

Walters alleged that the accident and her husband's death were caused by negligent operation of the NAPA truck by Jackson. (Amended Complaint ¶ 7.) Subsequently, NAPA joined AIM as an additional defendant, alleging that Jackson crossed the centerline because of negligent maintenance performed by AIM on the truck Jackson was driving at the time of the accident. (Amended Complaint ¶ 8.)

On October 25, 2010, NAPA, *without admitting liability*, settled and obtained a release of all claims by plaintiff in the Walters Action in exchange for payment of $1,050,000. (Amended Complaint ¶ 12.) NAPA's third party claims for contribution and indemnity against AIM remained pending. On July 10, 2014, a jury in the contribution and indemnity claims of NAPA against AIM in the Walters Action found that AIM was 100% liable for the accident, and therefore AIM was liable for the damages sustained by the Walters' Estate and paid by NAPA (i.e., $1,050,000.) (Amended Complaint ¶ 14.) The jury's verdict assigning no negligence to NAPA rendered NAPA a volunteer under Pennsylvania law, not a tortfeasor, and thus is not entitled to indemnity from AIM. This issue, among others, is on appeal before the Pennsylvania Superior Court, 1268 WDA 2015.

**B.  The Vehicle Maintenance Agreement**

Pursuant to the VMA signed on October 30, 2003 by NAPA and AIM, AIM provided vehicle maintenance services for NAPA. (Amended Complaint ¶ 9.) The VMA required NAPA to procure and maintain automobile liability insurance that was to name AIM as an additional insured. (Amended Complaint ¶ 10.) In conjunction with its general business operations, NAPA purchased from Discover the Policy at issue in this case; that policy included a $5,000,000 SFR and a Blanket Additional Insured Endorsement. (Amended Complaint ¶ 11.)

**C.     The Discover Policy and Self-Funded Retention**

The Policy included the SFR via an endorsement as it had from the commencement of the

Policy. It provided that:

> damages . . . caused in any one accident that would otherwise be payable under
> LIABILITY COVERAGE will be reduced by the self-funded retention
> [$5,000,000] applicable to such coverage . . . The Per Accident Limit of Insurance
> applicable to such coverage will be reduced by the amount of damages. . . payable
> under the policy, both within, and in excess of, such self-funded retention

(Amended Complaint ¶ 21.)

The SFR also provided that Discover "will delegate the responsibility to investigate,

adjust, defend and/or settle all claims or suits" to the insured, provided certain conditions were

met. Those conditions included:

> "[w]hen a claim or suit has been settled or adjudicated, the insured [AIM or NAPA] will
> promptly pay the amount of such claim or suit to the party to whom payment is due for
> damages. . . up to the applicable [$5,000,000] self-funded retention . . ."

 (Amended Complaint ¶ 22.)

Pursuant to the SFR, Discover similarly was not obligated to pay attorney's fees,

litigation expenses, interest, or costs associated with investigation or defense of a claim or suit

unless "the sum of such amounts … exceeds the applicable self-funded retention." (Amended

Complaint ¶ 23.)

The SFR endorsement required that the insureds, AIM and/or NAPA, pay the first

$5,000,000 of any defense costs or indemnity with respect to the Walters Action. In this

declaratory judgment action, Discover seeks a declaration affirming the rights and obligations of

AIM, NAPA and Discover with respect to the SFR and order of payment of indemnity among the

parties for covered losses.

Under a policy written with a SFR, the insured is required to properly exhaust the SFR's retained limit.   Only after that retained limit is satisfied does the insurer have any obligation to make any additional payments up to the amount covered under the policy. *Kleban v. National Union Fire Insurance Company of Pittsburgh, PA*, 771 A.2d 39 (Pa. Super. 2001); *Georgia-Pacific LLC, f.k.a. Georgia-Pacific Corporation v. U.S. Fidelity & Guaranty Company*, 439 Fed.Appx. 796 (11th Cir. 2011) (holding that insured was not obligated to make payments under a policy with a self-funded retention endorsement until insured's damages exceeded the $2.5 million self-funded retention.)

In this case, the SFR was equal to the Policy's $5,000,000 per accident limit of liability. Such policies are sometime referred to as "fronting" policies and are a well-accepted alternative risk arrangements sought by many large corporations whose statutory requirements mandate evidence of certain high levels of insurance, or, because of financial wherewithal, they desire and have the capacity to manage and absorb claim exposures at high levels. By utilizing this model, the insured has the advantage of deciding what losses it will pay, how much it will pay, and in all other respects controlling the costs associated with the claims and suits. Most importantly from a financial perspective, under this alternative risk arrangement, the insured pays a premium for the SFR policy that is but a small percentage of what it would otherwise pay in premium for a non SFR policy.[6] For its part, the fronting insurer, in return for this substantially reduced premium, limits its risk to the credit risk that the insured is unable (e.g. insolvency) to meet its SFR obligation.

---

[6] In this regard, NAPA paid only $140,409 in premium for a policy affording $5 Million in per accident liability coverage and covering its fleet of over 8,500 vehicles operated in more than 40 states. (Amended Complaint, Exhibit "A")

### C.  The Indemnity Agreement between NAPA and Discover

On September 1, 2002, Discover's predecessor in interest, USF&G,[7] and NAPA executed the Indemnity Agreement to memorialize the understandings and agreements between the parties with respect to the Policy. (Amended Complaint ¶ 24, Ex. "D," Exhibit "2" herein.)  Effective September 1, 2009, Schedule A to the Indemnity Agreement was amended to add Policy number D004A00341, the Policy, policy period September 1, 2009 to September 1, 2010. (Amended Complaint ¶ 25, Ex. "D" pp. 19-20, Exhibit "2" herein.)

The Indemnity Agreement recited in detail the background underlying the issuance of the Policy in order to, among other things, memorialize and reaffirm NAPA's obligations to Discover should Discover be required to pay any sum or incur legal fees or costs or other expenses, in connection with claims covered under the Policy:

> WHEREAS, Company has issued or will issue certain insurance policies, (hereinafter, together with Endorsements, thereof, "the Policies"), the Policy periods and self-funded retention(s) (the "SFR(s)") which are set forth in Schedule A attached hereto and incorporated herein by this reference as if set out in full; and

> WHEREAS, Company has attached or may attach to the Policies certain endorsements, including those required by applicable Federal and/or State law and regulations (all of which are referred to as the "Endorsements"), and has filed or may file with Federal and/or State governmental regulatory agencies evidence of the issuance of the Policy(ies) (all of which are referred to as the "Filings"); and

> WHEREAS, Company has issued or may issue to third parties certificates or evidence of insurance ("Certificates") reflecting coverage provided under the Policy(ies); and

> WHEREAS, Company has provided in the Policy(ies) that insured shall retain primary responsibility to investigate, adjust and defend and/or

---

[7] Discover and USF&G are related companies in that they are both wholly owned subsidiaries of St. Paul Fire and Marine Insurance Company, which in turn is a wholly owned subsidiary of The Travelers Companies, Inc.

settle all Claim and pay all Ultimate Retained Losses up to the amount of the SFR(s); and

WHEREAS, the premium due under each Policy is reduced because of the SFR(s) assumed by Insured; and

WHEREAS, because of the Policy(ies), Filings and Certificates, Company may be responsible to third parties for Claims for which Insured is responsible under the SFR(s); and

WHEREAS, Company and Insured wish to set forth their mutual rights, duties and obligations with regard to the disposition of Claims consistent with the SFR(s); and

WHEREAS, Company and Insured wish to provide for adequate security to ensure the availability for funds to pay the Claims assumed by Insured within the SFR(s) and a share of the associated Claim Expenses.

(Amended Complaint ¶ 26, Ex. "D" p. 1, Exhibit "2" herein.)

The Indemnity Agreement reiterated certain terms and conditions in the SFR including but not limited to NAPA's " . . . responsibility to investigate, adjust, defend and/or settle all Claims . . ." within the SFR. (Amended Complaint ¶ 27, Exhibit "D" p. 4, Exhibit "2" herein )

In order to further guarantee NAPA's obligations under the Policy and Indemnity Agreement and secure Discover should it ever be required to make a payment within the $5,000,000 SFR, NAPA was required to post a letter of credit, subject to periodic adjustments. (Amended Complaint ¶ 28, Ex. "D," pp. 10-11, Exhibit "2" herein)

Under the terms of the Indemnity Agreement, Discover's obligation to pay any sum under the Policy was only to occur:

When the Insured's legal obligation to pay Loss with respect to an Incident or Accident has been determined by Insured and agreed to in writing by Company, and the amount of such Loss exceeds the applicable SFR(s), Company will indemnify Insured for a portion of the Claim Expenses in the ratio that the portion of the Loss in excess of such SFR bears to the total Loss payable (inclusive of such SFR) under the Policy with respect to such Incident

or Accident.  This indemnity shall be in addition to the applicable Limits of Insurance under the Policy.

B" (Amended Complaint ¶ 29, Ex. "D," p. 7, Exhibit "2" herein.)

Additionally, in order to further protect Discover should NAPA fail to fulfill its obligations under the Indemnity Agreement and protect Discover should it ever be required to make any payment within the $5,000,000 SFR, the Indemnity Agreement requires that NAPA defend, indemnify and hold harmless  Discover from and against any and all liability, damages, fines, penalties, assessments, costs and expenses (including reasonable attorney fees) arising out of payments made by Discover in connection with, among other things, losses "within the SFR(s)" under the scheduled policies that includes the Policy. (Amended Complaint ¶ 30, Ex. "D," pp. 8-9, Exhibit "2" herein)

To the extent that Discover is required to indemnify  AIM , ,,. Therefore NAPA is required to indemnify Discover in accordance with the Indemnity Agreement. (Amended Complaint ¶ 31.)

### D.  Pennsylvania Declaratory Judgment Actions

During the pendency of the Walters Action, AIM filed two declaratory judgment actions seeking a declaration it was an additional insured entitled to coverage under the Policy for the Walters Action. AIM filed its first action in the United States District Court for the Middle District of Pennsylvania, 2-12-cv-00480. That action was stayed with jurisdictional motions pending and no decision was ever made or order entered on the merits. As stated by NAPA, the "district court entered an Order staying the PA Federal Court Declaratory Judgment Action pending resolution of the Underlying PA Tort Action." None of the parties have made any efforts to lift the stay.

AIM filed its second declaratory judgment action in the Court of Common Pleas of Washington County, Pennsylvania ("PA State Court Action") seeking a declaration it was an additional insured entitled to coverage under the Policy for the Walters Action. AIM filed a motion for summary judgment and Discover filed a cross-motion for summary judgment. NAPA then joined in Discover's argument in the PA State Court Action that AIM was not entitled to coverage pursuant to the "insured contract" provision on the Policy. On June 19, 2014, President Judge DiSalle issued an opinion and orders that granted AIM's motion and denied Discover's motion. (Amended Complaint, Exhibit "B"). Discover appealed, but ultimately withdrew its appeal, accepting a declaration that AIM is an additional insured under the Policy for the Walters Action.

Neither the litigants nor Judge DiSalle addressed any other terms, exclusions or conditions of the Policy. (Exhibit "3") More specifically, the application of the SFR was not raised, briefed or argued, and for good reason: unless and until it was determined that AIM was an additional insured and had any liability for the Walters' accident, litigating whether AIM satisfied the Policy's terms, conditions, exclusions, or the SFR that controlled any current duty of Discover to make any payment for or to AIM for a covered loss was not ripe. To do so would have been premature because no fact finder had decided whether AIM or NAPA, or both, were responsible for the motor vehicle accident that caused Walters' death. If only AIM was responsible, as was found by the jury, under the applicable law, NAPA would have been a mere volunteer and thus not entitled to contribution or indemnity from AIM.

That determination was not made until three weeks after Judge DiSalle's June 19, 2014 order and opinion (and months after briefs were filed and argument held before Judge DiSalle) when a jury returned a verdict in favor of NAPA and against AIM, finding that AIM was 100%

responsible for the accident and awarding NAPA $1,050,000, the amount that NAPA had voluntarily paid to the estate of the decedent to settle the Walters case. (Amended Complaint ¶ 14.)  $1,050,000 is well within the $5,000,000 SFR and , because AIM' s liability does not exceed the $5,000,000 SFR, Discover has no obligation to pay for any portion of the legal fees and costs incurred in defense of the matter.

This action involves two issues that were not ripe until AIM was declared an additional insured. The first issue is – has the SFR been properly exhausted? More specifically, the question is whether in connection with the underlying claims, the insureds have paid and/or satisfied or will be called upon to pay an amount in excess of the $5,000,000 SFR obligation, such that Discover has any present indemnity obligation. This issue has not been addressed, nor could it have been, in any prior action.  The second issue presented is whether pursuant to the Indemnity Agreement, NAPA (separate and apart from its obligations under the SFR) must indemnify Discover to the extent Discover pays any  indemnity or any other costs incurred by or on behalf of its insureds in connection with Walters Action. *C.H. Heist Caribe Corp. v. American Assurance Company,* 64 F.2d 479, 481 (3d Cir. 1981) and cases cited therein hold that an insurer's obligation to defend is not coextensive with its obligation to indemnify. *See also, UPS Freight v. National Union Fire Ins. Co. of Pittsburgh*, 428 Fed.Appx. 168, fn 5 (2011).  Again, this issue has not been addressed, nor could it have been, in any prior action. Therefore, the defenses asserted in NAPA's motion to dismiss are not applicable and the motion should be denied.

### III. *STANDARD OF REVIEW*

Among the vehicles often used to challenge the sufficiency of a pleading is the filing of a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ.

- 14 -

P. 12(b)(6) and *res judicata,* although an affirmative defense, may be raised in a Rule 12(b)(6) motion. *Rycoline Products, Inc. v. C & W Unlimited,* 109 F.3d 883, 886 (3d. Cir.1997); *Mack v. Municipality of Penn Hills,* 547 F.Supp. 863, 868, fn 9 (W.D.Pa.1982). Of course, in resolving a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir., 1990). In so doing, the court must accept as true the facts alleged in the complaint, together with all reasonable inferences that can be drawn therefrom and construe them in the light most favorable to the plaintiff. *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir., 1990); *Hough/Loew Associates, Inc. v. CLX Realty Co.,* 760 F.Supp. 1141 (E.D.Pa.,1991). Dismissal under Rule 12(b)(6) for failure to state a claim is therefore limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.,1988); *Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939, 944 (3d Cir., 1985), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985).

## IV. *ARGUMENT*

**A. Discover Has Not Waived its Claims that NAPA Must Indemnify Discover for the First $5,000,000 Incurred for Any Covered Loss Pursuant to the SFR Endorsement and the Indemnity Agreement Because these Claims Were Not an Affirmative Defense to AIM's Complaint Seeking a Declaration of Coverage in the PA State Court Action nor Were They Ripe.**

NAPA's contention that Discover, by not raising its claims for declaratory judgment as *affirmative defenses* in its Answer to AIM's Complaint in the PA State Court Action, has waived its right to seek indemnity from NAPA pursuant to the SFR and Indemnity Agreement is absurd. First, if Discover had sought to assert those claims, they would have been asserted as crossclaims

against NAPA, not as an affirmative defense to AIM's claim that it was an additional insured. Second, these claims did not ripen until the PA Sate Court Action was adjudicated and AIM received a declaration that it was an additional insured.

Under Pennsylvania law, it is well-settled that a cause of action for indemnity does not arise until the indemnitee has suffered *actual loss or damage,* and has had its liability for such loss "fixed and established." *Borough of West View v. North Hills School Dist.,* 418 A.2d 527, 529-530 (Pa. Super. 1980).  The reason for such a rule is obvious: where the underlying claim has not yet been resolved it is impossible to know whether the indemnitee will have any obligation to make payment, and, if so, whether that obligation will fall within the scope of the indemnity provision at issue, and to what extent. *See, e.g., McClure v. Deerland Corp.*, 585 A.2d 19, 22-3 (Pa. Super. 1991) (right to indemnification does not arise until indemnitee's payment obligation arises); *American Society for Testing & Materials v. Corrpro Companies, Inc.,* 2005 WL 1941653 at *7--8 (E.D. Pa., 2005)(contractual indemnity claim did not accrue until there is an obligation to make payment on the underlying claim); *Transportation Ins. Co. v. Spring-Del Assoc.,* 159 F. Supp.2d 836, 839-40 (E.D., Pa. 2001)(indemnity claim does not arise before payment obligation); *Crestar Mrt. Corp. v. Peoples Mortg. Co., Inc.,* 818 F.Supp. 816, 818 (E.D., Pa. 1993) (it is well-settled under Pennsylvania law that claims for indemnity do not arise until indemnitee has suffered actual loss or damage); *Rubin Quinn Moss Heaney & Patterson P.C. v. Kennel,* 832 F. Supp. 922, 935 (E.D.,Pa. 1993)(cause of action for indemnity does not accrue until indemnitee owes payment obligation to third party). Litigating a potential indemnity claim that has not ripened and might never do so is "both a substantial waste of time and an improper use of judicial resources." *Crestar Mortgage,* 818 F.Supp. at 821.

Here, Discover seeks a declaration that NAPA and AIM are required to properly exhaust the SFR.  Discover also asks the Court to declare that the Indemnity Agreement requires NAPA to indemnify Discover to the extent  Discover is required to pay for any indemnity or other costs in connection with the Walters Action. Litigating these issues before AIM obtained a declaration that it was an additional insured under the Policy for the Walters Action would have been "both a substantial waste of time and an improper use of judicial resources." *Crestar Mortgage,* 818 F.Supp. at 821.

Now that AIM has been declared an additional insured in light of the VMA, the Blanket Additional Insured Endorsement, and Judge DiSalle's conclusion that "contractual liability coverage" under the Policy included an additional insured's own negligence, Discover's requests for declaratory judgment that a) the SFR  must be properly exhausted by NAPA and/or AIM and b) the  Indemnity Agreement obligates NAPA to indemnify Discover for any indemnity or other costs paid by Discover with respect to the Walters Action  are ripe and appropriately pending before this Court for adjudication.

## B. *Res Judicata* **Does Not Apply to the Instant Case Because (1) It Does Not Involve the Same Claims and (2) the Claims Giving Rise to this Declaratory Judgment Action Have Not Been Previously Litigated Nor Could They Have Been.**

The application of *res judicata* requires its proponent to demonstrate three elements: (1) a final judgment on the merits in a prior suit involving, (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action. *Lubrizol Corp. v. Exxon Corp.,* 929 F.2d 960, 963 (3d Cir.1991) (citing *United States v. Athlone Indus., Inc.,* 746 F.2d 977, 983 (3d Cir.1984)). "If these three factors are present, a claim that was or could have been raised previously must be dismissed as precluded." *CoreStates Bank, N.A. v. Huls Am., Inc.,* 176 F.3d 187, 194 (3d Cir.1999).

This case does not involve the "same cause of action" asserted in any prior case.  The United States Court of the Appeals for the Third Circuit has stated "the term 'cause of action' cannot be precisely defined, nor can a simple test be cited for use in determining what constitutes a cause of action for *res judicata* purposes." *Lubrizol*, 929 F.2d at 963 (3d Cir. 1991) (quoting. *Athlone.,* 746 F.2d at 983). Rather, courts look toward the "essential similarity of the underlying events giving rise to the various legal claims." *Davis v. United States Steel Supply,* 688 F.2d 166, 171 (3d Cir.1982) (en banc), *cert. denied,* 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983). This inquiry involves consideration of "whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same." *Lubrizol,* 929 F.2d at 963 (quoting *Athlone,* 746 F.2d at 984). "Where the evidence required to prove a new claim would have been largely immaterial in a prior confirmation proceeding," the "essential similarity of the underlying events" required to give rise to claim preclusion is not satisfied. *CoreStates Bank*, 176 F.3d at 202; *see also Facchiano Constr. Co. v. United States Dept. of Labor,* 987 F.2d 206, 212–13 (3d Cir.1993) ("whether the material facts alleged are the same" is a key factor in determining whether claim preclusion applies; claim preclusion did not apply where the two claims rested on "different evidence"); *Athlone Indus.,* 746 F.2d at 984 (same).

The claims Discover has pled against NAPA in this action are not identical to any prior claim in any other proceeding. Specifically, in the PA State Court Action, AIM sought a declaration that AIM is an additional insured under the Discover Policy." (Amended Complaint ¶ 15 and Exhibit "3" herein.) The sole issue litigated in the PA State Court Action was whether NAPA's obligation in the VMA to indemnify AIM and procure insurance coverage triggered the "insured contract" provision under the Policy thereby affording coverage to AIM as an additional

insured. The rights and obligations of the parties pursuant to the SFR endorsement and the Indemnity Agreement were  never litigated, nor could they have been, because those issues were not ripe. (*See* Exhibit "3")

As stated by Judge DiSalle in his order in the PA State Court Action, "[t]he issue before this Court is **whether** Discover owes a duty of coverage **to AIM as an additional insured under the insurance policy in question."** (*See* Exhibit "3," Opinion and Order of Judge John F. DiSalle, at page 3)(emphasis added). Judge DiSalledemonstrate did not consider any of the conditions or exclusions in the Policy and, more particularly, the SFR Endorsement. The determination of whether AIM was an additional insured and whether the "insured contract" provision required indemnity for AIM's negligence involves an entirely separate and distinct factual predicate from the determination of whether NAPA (or any  insured under the Policy), properly exhausted   the SFR.. Indeed, the terms, conditions, and provisions of the SFR Endorsement were neither relevant nor necessary to Judge DiSalle's determination of whether the VMA was an "insured contract."

Further, the Indemnity Agreement was never at issue in the PA State Court Action (a fact conveniently omitted from NAPA's Motion to Dismiss), because it was not relevant to the narrow issue being litigated in that action – whether AIM was an additional insured under the Policy. Again, Discover's claims with respect to the Indemnity Agreement were not ripe before AIM was adjudicated to be an additional insured under the Policy, and thus could not have been raised or adjudicated in the PA State Court Action instituted by AIM.

Because the "evidence required to prove" Discover's claims pursuant to the SFR and Indemnity Agreement "would have been largely immaterial in [the PA State Court Action]," the

"essential similarity of the underlying events" required to give rise to claim preclusion is not satisfied. *CoreStates Bank*, 176 F.3d at 202. Accordingly, *res judicata* does not apply.

### C. Collateral Estoppel Does Not Apply to Bar the Instant Case Because the Issues Presented in the Instant Case Have Not Been Previously Litigated.

A finding of issue preclusion is only appropriate when "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) th[e] issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Peloro v. United States,* 488 F.3d 163, 175 (3d Cir., 2007) (quoting *Burlington N. R.R. v. Hyundai Merch. Marine Co.,* 63 F.3d 1227, 1231–32 (3d Cir., 1995)). The party seeking to invoke collateral estoppel bears the burden of proving each of its elements. *See Dici v. Pennsylvania,* 91 F.3d 542, 548 (3d Cir., 1996).

As demonstrated above, the issue decided in the PA State Court Action was limited to the determination of whether AIM qualified as an additional insured pursuant to the VMA and the Blanket Additional Insured Endorsement for AIM's own negligence. Judge DiSalle did not address AIM's or NAPA's SFR obligations (*See* Exhibit "3C.") Judge DiSalle also did not address whether NAPA's obligations pursuant to the Indemnity Agreement. (*See id.*) Consequently, the issues to be litigated in the present case are markedly different and collateral estoppel does not apply.

Further, for collateral estoppel to apply to bar a claim, the issue must have been shown to be "actually litigated." *Peloro,* 488 F.3d at 175; *see also Brown v. Tucci,* 960 F. Supp. 2d 544, 573 (W.D. Pa. 2013) (refusing to apply collateral estoppel where issue presented was never actually litigated). In other words, collateral estoppel may only apply where the same issue was brought before the court, evidence was presented, and a determination was made by a judge or

jury. In the PA State Court Action that serves as the basis for NAPA's Motion to Dismiss, the applicability of the SFR Endorsement and its provisions with respect to the insureds' obligations of AIM, NAPA and wasDiscover were never raised or litigated and was certainly not determined or ruled upon by Judge DiSalle. (*See* Exhibit "3.") The same is true of the Indemnity Agreement. *Id*. No evidence whatsoever was presented regarding either the SFR Endorsement or the Indemnity Agreement in any prior litigation. Because these issues have never actually been litigated, these issues are not precluded from consideration in this matter.

### V. *CONCLUSION*

Although the issues presented in this action concern indemnity for AIM's losses, NAPA is the author of this miasma; it devised what it believed was a strategy to cap its exposure in the Walters Action by (1) agreeing to a settlement with the Walters Estate for $1,050,000 (never admitting liability in the release obtained from the Walters Estate or at trial when it sought indemnity and contribution from AIM) and (2) thereafter seeking to recover all or part of that payment from AIM in a sanitized jury trial free of the sympathy and emotion that would have accompanied a traditional trial pitting the Walters Estate against NAPA and AIM. There can be little doubt that NAPA's plan was conceived with the expectation that AIM's insurance carrier ─ HARCO ─ would then be responsible for payment to NAPA of that portion of the $1,050,000 equal to the percentage of liability assessed by the jury against AIM.

However, it is plain and clear, that NAPA in devising this strategy neglected to recall that it had entered into a VMA that required that AIM be named an additional insured on *NAPA's insurance policy*, thereby throwing into the mix of possible applicable insurance not just AIM's HARCO policy, but also the Discover Policy with its Blanket Additional Insured Endorsement and the $5,000,000 SFR, as well as  the Indemnity Agreement. Thus, NAPA placed itself in the

position of potentially obtaining a judgment against AIM for which AIM would be afforded coverage under the Discover Policy, but within NAPA's SFR obligation, and which could also trigger NAPA's obligations to Discover pursuant to the  Indemnity Agreement., In other words, the net result of  NAPA's strategy is a a scenario in which NAPA obtains $1,050,000 judgment against AIM but is required to pay (itself) the judgment pursuant to the SFR or, if it refuses to do, indemnify Discover for any payment made to AIM under the Policy.

NAPA refuses to acknowledge the end result that has triggered its (and Discover contends as well, AIM's) SFR obligation.  NAPA seeks to avoid and ignore the obligations it assumed under the Policy.  "Fronting"  policies containing SFR endorsements, like the Discover Policy, are a well-accepted alternative risk arrangements sought by many large corporations whose statutory requirements mandate evidence of certain high levels of insurance, or, because of financial wherewithal, they desire and have the capacity to manage and absorb claim exposures at high levels. *See*, 31 No. 19 *Ins. Litig. Rep.* 629 (2009).  NAPA chose to purchase a policy with a significant SFR Policy equal to the applicable limits of liability, and has enjoyed the benefits of the Policy.  NAPA should not be allowed to ignore and shirk its promise to self-fund its indemnity obligations:

- By utilizing this model, **NAPA** had the advantage of deciding what losses it would pay (including its settlement of the Walters action), how much it would pay, and in all other respects retained control of the costs associated with the claims and suits.

- Under this alternative risk arrangement, **NAPA** paid a premium for a SFR policy that was but a small percentage of what it would otherwise pay in premium for a non SFR policy.

- 22 -

- **NAPA** made a business decision to obtain a policy with a high SFR and low premiums.

- Thereafter, **NAPA** decided to make AIM an additional insured under the Policy when it entered into the VMA.

- **NAPA** controlled the defense of the Walters Action.

- **NAPA** decided to settle and pay the Walters case without any input from Discover or AIM.

- **NAPA** then sought indemnity from AIM and convinced a jury to find against AIM on that issue.

- After AIM filed suit seeking a declaration of its additional insured status under the Discover Policy in the PA State Court Action, **NAPA** actually joined in Discover's motion for summary judgment and argued that AIM was not entitled to coverage pursuant to the "insured contract" provision as an additional insured on the Policy for the Walters' Action. (Amended Complaint ¶ 18)[8]

Now that there has been a declaration that AIM is an additional insured under the Discover Policy, NAPA, looking for another way to avoid its SFR and indemnity obligations to Discover, seeks to dismiss Discover's SFR and indemnity claims on the purported basis that these claims should have been raised in the PA State Court Action. NAPA's argument that under principles of waiver, res judicata and collateral estoppel the PA State Court Action bars Discover

---

[8] It is likely by this time, NAPA had come to realize that its creative strategy to avoid or reduce its responsibility for the Walters accident and recoup a substantial portion or all of the $1,050,000 it paid was in jeopardy if in fact it was determined  that  AIM was an additional insured under the Discover policy; perhaps NAPA realized that given its obligation under the Discover Policy to pay as much as $5,000,000 for the SFR, should AIM be an additional insured, NAPA would in truth be paying itself.

from bringing its claim against NAPA for payment of its SFR obligation and indemnity is truly the height of impudence and audacity. Indeed, NAPA's Motion to Dismiss does not even address the Indemnity Agreement. Moreover, as above noted, Discover's claims against NAPA were not ripe, and could not be, until after the PA State Court Action was adjudicated.

Clearly NAPA eschews the thought that this Court would decide its indemnity obligation on the merits because to do so would produce an entirely unsatisfactory outcome and a judgment on what NAPA believed was a clever strategy to cap its exposure by entering into a settlement with the Walters Estate for $1,050,000 and thereafter recover all or part of that payment from AIM. NAPA's position is unsupported by law and undermines sound public policy. Rather than acknowledging its obligations under the SFR and Indemnity Agreement, NAPA now seeks to avoid them.

For the foregoing reasons, NAPA has failed to provide a valid basis for the dismissal of the instant action. The doctrines of waiver, *res judicata* and collateral estoppel are not applicable to the instant declaratory judgment action. This case presents issues that have never been heard or argued before any other court.  Accordingly, NAPA's motion to dismiss should be denied.

Respectfully submitted,

**LITCHFIELD CAVO LLP**

By:    */s/Edward A. Smallwood*
       Edward A. Smallwood, Esq., PA ID 80919

       420 Fort Duquesne Boulevard, Suite 600
       One Gateway Center
       Pittsburgh, PA  15222
       Attorney for Plaintiff,
       Discover Property & Casualty
       Insurance Company

Date: <u>January 13, 2016</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DISCOVER PROPERTY & CASUALTY | ) | Civil Action No. 15-998 |
| INSURANCE COMPANY, | ) | Judge Cathy Bissoon |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AIM LEASING COMPANY d/b/a AIM | ) | |
| NATIONALEASE and GENUINE PARTS | ) | |
| COMPANY d/b/a NAPA AUTO PARTS | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I, Edward A. Smallwood, Esquire, do hereby certify that a true and correct copy of the Answer and Brief in Support of Plaintiff Discover Property & Casualty Insurance Company's Response in Opposition to Defendant Genuine Parts Company's Motion to Dismiss has served via the Court's ECF system, this 13th day of January, 2016, upon the following counsel of record:

Robert E. Dapper, Jr., Esquire
Christopher M. Jacobs, Esquire
Dapper, Baldasare, Benson, Behling & Kane, P.C.
Four Gateway Center
444 Liberty Avenue, 10th Floor
Pittsburgh, PA  16222
*(Counsel for AIM Nationalease)*

Paul R. Robinson, Esquire
Meyer, Darragh, Buckler, Bebenek & Eck, PLLC
U.S. Steel Tower, Suite 4850
600 Grant Street
Pittsburgh, PA  15219
*(Counsel for Genuine Parts Company, t/d/b/a
NAPA Auto Parts)*

*/s/Edward A. Smallwood*
Edward A. Smallwood, PA ID 80919