IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY, | Civil Action No. 15-998 |
| | Judge Cathy Bissoon |
| Plaintiff, | |
| v. | |
| AIM LEASING COMPANY d/b/a AIM NATIONALEASE and GENUINE PARTS COMPANY d/b/a NAPA AUTO PARTS, | |
| Defendants, | |
| v. | |
| HARCO NATIONAL INSURANCE COMPANY, | |
| Additional Defendant. | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS GENUINE PARTS COMPANY'S CROSSCLAIM AGAINST AIM NATIONALEASE PURSUANT TO RULE 12(b)(6)**

NOW, comes Defendant AIM Leasing Company d/b/a Aim NationaLease ("AIM"), by and through its attorneys, Burns White LLC, and files a Brief in Support of Motion to Dismiss Genuine Parts Company's Crossclaim Against AIM NationaLease Pursuant to Rule 12(b)(6).

### I. SUMMARY OF ARGUMENT

Genuine Parts bought an insurance policy that obligates it to satisfy a self-funded retention of up to $5 million. That self-funded retention is now implicated and Genuine Parts is doing whatever it can to avoid it. On one hand, Genuine Parts claims that it is simply not responsible for it. On the other, it claims that someone else should be responsible for it.

In its latest iteration of claiming "not it," Genuine Parts has asserted a crossclaim against AIM under a rather specious contractual indemnity theory, arguing that AIM should be

responsible for indemnifying Genuine Parts for its agreed-to obligations under its own insurance policy, asking this Court to read an indemnification provision so broadly that it would have to convince itself that the insurance coverage issues in this matter somehow pertain to AIM's maintenance of a truck.

Genuine Parts' obligations to satisfy its own self-funded retention under its insurance policy cannot be characterized as relating to another party's maintenance work performed on a vehicle and thus do not fall within the scope of the Vehicle Maintenance Agreement's indemnification provision. Moreover, any such finding would effectively require AIM to be responsible for Genuine Parts' self-funded retention and would be contrary to this Court's prior ruling on this very issue.

Because Genuine Parts' crossclaim against AIM fails to state a claim upon which relief can be granted, it should be dismissed.

## II.    STANDARD OF REVIEW

In resolving a Rule 12(b)(6) motion, the court primarily considers the allegations in the pleading , although matters of public record, orders, items appearing in the record of the case and exhibits attached to the pleading may also be taken into account. Tyler, 52 F. Supp.2d at 474 (citing Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808 (3d Cir. 1990)). In considering whether a pleading fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the pleading and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250. (3d Cir. 1994). However, a court "need not credit a [pleading's] 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Id.

### III.  ARGUMENT

A.  **Genuine Parts' Obligation to Satisfy Its Self-Funded Retention Under Its Insurance Policy Cannot Be Construed as Pertaining to the Maintenance of a Truck.**

Genuine Parts finds itself in the unenviable position of having contractually agreed to a $5 million self-funded retention ("SFR") with its insurer, and now that the SFR has come due, having to find a way to escape from it.

In a last-ditch effort to heal this self-inflicted wound, Genuine Parts has resorted to pointing to the Genuine Parts-AIM Vehicle Maintenance Agreement ("VMA") as the ultimate panacea for all things relating to this matter, in an attempt to push off its responsibility for its SFR under its own insurance policy on to AIM.  The Court should reject this absurd result advocated by Genuine Parts as a matter of law and dismiss Genuine Parts' crossclaim asserted against AIM.

The parties have agreed throughout these many proceedings that the VMA is governed by Georgia law and in this regard, the VMA has a choice of law provision identifying Georgia law as being applicable to the interpretation of the same. (See Doc. 93-1 at p. 20 of 39.)  With regard to contract interpretation under Georgia law, "[t]he cardinal rule of construction is to ascertain the intention of the parties." Serv. Merch. Co. v. Hunter Fan Co., 617 S.E.2d 235 (Ga. App. Ct. 2005).  "The language which the parties have used will be looked to for the purpose of finding that intention, which…once ascertained will prevail over all other considerations, in determining the nature of the agreement." Id. (citations omitted).  As it relates to the interpretation of contractual indemnification provisions in particular, "the words of a contract of indemnification must be construed strictly against the indemnitee." Id. (citations omitted).  "[A]nd every presumption is against such intention [to indemnify]." Id. (citations omitted).

3

Here, the clear purpose of the VMA relates to AIM's maintenance work relative to Genuine Parts vehicles. In fact, the operative language relied upon by Genuine Parts in its crossclaim specifically turns on the phrase "maintenance of the Vehicles performed by [AIM]." (See Doc. 93 at ¶ 116.) Based on the clear language of the VMA, the only reasonable conclusion concerning the intention, nature and scope of the VMA indemnification agreement is that AIM agreed to indemnify Genuine Parts for bodily injury and property damage sustained by a third party as a result of AIM's maintenance of a Genuine Parts vehicle. To be sure, the best evidence supporting this conclusion is the underlying wrongful death action itself, where Genuine Parts was successful in obtaining a judgment against AIM under an indemnity theory premised on the very VMA indemnification provision at issue. The boundaries of AIM's indemnity obligations under the VMA, however, stop there.

Given that Georgia law requires strict construction of indemnification language against the indemnitee, and dictates that every presumption is against the purported intention to indemnify, Genuine Parts cannot support its tortured reading of the VMA indemnification provision. This action relates to nothing more than issues of insurance coverage. Should Genuine Parts be found to be required to satisfy its SFR under the plain terms of its insurance policy with Discover, the same cannot somehow be transformed into pertaining to AIM's maintenance of a Genuine Parts vehicle. Such would take more than a mere inferential leap; indeed, it would require the suspension of reason and logic. The purported connection between the applicability of the provisions of the Discover insurance policy in this matter and AIM's work on a truck is beyond attenuated. Genuine Parts' position is anathema to basic contract interpretation and should be rejected.

B.   **Genuine Parts' Crossclaim Against AIM is Contrary To and Inconsistent With This Court's Prior Ruling.**

Genuine Parts' attempt to recast its SFR obligation under its insurance policy into an indemnity obligation on the part of AIM is also in direct contravention to this Court's ruling on prior Rule 12 motions in this matter.

In its August 5, 2016 Memorandum and Order (Doc. 87), the Court ruled on, *inter alia*, Genuine Parts' motion to dismiss AIM's alternative crossclaim, wherein AIM argued that if it were found to be responsible for Genuine Parts' SFR under the Discover policy, then Genuine Parts would have committed a breach of the VMA's insurance provision for failing to procure appropriate insurance.  The Court dismissed that portion of Discover's Amended Complaint for Declaratory Judgment as to AIM, effectively ruling that AIM cannot be responsible for Genuine Parts' SFR under the Discover policy.  (See Doc. 87 at 7.)  Because there is no possibility that AIM will be responsible for Genuine Parts' SFR—and because AIM's crossclaim was wholly predicated on that prospect—the Court dismissed AIM's crossclaim for breach of the VMA's insurance requirements as moot.  (See Doc. 87 at 9:  "Without a pending declaratory judgment count pertaining to AIM, AIM's arguments are rendered moot…")

Genuine Parts' desire to shift its SFR obligations on to AIM under the guise of contractual indemnity pursuant to the VMA amounts to nothing more than a thinly-veiled attempt to circumvent the effect of the Court's ruling that AIM cannot be responsible for the SFR.  Such a result would not only be wholly contrary to and inconsistent with the Court's previously-established finding, but would also be inequitable, given that AIM would be unable to pursue its "mooted" breach of contract claim against Genuine Parts for failure to procure adequate insurance.

## IV.     CONCLUSION

For the foregoing reasons, AIM respectfully requests that this Honorable Court enter an Order dismissing Genuine Parts' crossclaim against AIM, with prejudice.

          Respectfully submitted,

          BURNS WHITE LLC

        By /s/  Christopher M. Jacobs
             Christopher M. Jacobs
             PA ID #89092
             Four Northshore Center
             106 Isabella Street
             Pittsburgh, PA  15212
             *(Attorneys for AIM Leasing Company d/b/a AIM NationaLease)*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 20th day of September 2016, the within **BRIEF IN SUPPORT OF MOTION TO DISMISS GENUINE PARTS COMPANY'S CROSSCLAIM AGAINST AIM NATIONALEASE PURSUANT TO RULE 12(b)(6)** was filed electronically. Notice of this filing will be sent to all Parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/  Christopher M. Jacobs