IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY, | CIVIL ACTION |
| Plaintiff, | No: 2:15-cv-00998 |
| vs. | |
| AIM NATIONALEASE, and GENUINE PARTS COMPANY t/d/b/a NAPA AUTO PARTS, | **HONORABLE CATHY BISSOON** |
| Defendants, | PAUL R. ROBINSON, ESQUIRE |
| vs. | PA I.D. No. 65581 |
| HARCO NATIONAL INSURANCE COMPANY, | |
| Third-Party Defendant. | **JURY TRIAL DEMANDED** |

**GENUINE PARTS' RESPONSE BRIEF IN OPPOSITION TO AIM NATIONALEASE'S MOTION TO DISMISS GENUINE PARTS' CROSSCLAIM**

**I. PROCEDURAL HISTORY**

This declaratory judgment action filed by Discover Property & Casualty Insurance Company ("Discover") was filed following the entry of a previous declaratory judgment entered against Discover in state court ("the PA State Declaratory Judgment"), which judgment declared that Discover must defend and indemnify AIM for Genuine Parts' judgment entered against AIM in underlying personal injury litigation that resulted from AIM's negligent maintenance of a vehicle used by Genuine Parts and AIM's breach of the Vehicle Maintenance Agreement ("VMA") relating to that vehicle.

{P1271723.1}

Following that adverse declaratory judgment entered against Discover, Discover has been litigating in different federal courts its efforts to avoid it by (1) requesting the federal courts to declare that Discover did not have a duty to defend or indemnify AIM and, if Discover cannot re-litigate that declaratory judgment, (2) arguing that, despite the clear mandate of that declaratory judgment against Discover, Discover can escape the judgment against it because Genuine Parts must satisfy the judgment Discover created against itself, and do the impossible – defend a company Genuine Parts sued (AIM), and then pay itself for the judgment entered against AIM.[1]

This Court previously ruled in its Memorandum and Order (Document 87) that Discover will not be permitted to re-litigate the PA State Declaratory Judgment which declared that Discover owes a defense and indemnity to AIM, and this Court <u>sua sponte</u> dismissed Count I of <u>Discover's</u> declaratory judgment action against AIM.  This Court did not address in any manner the VMA, or the indemnity obligations of AIM set forth therein, as now suggested by AIM in its motion to dismiss Genuine Parts' crossclaim.

This Court did permit Discover to proceed with Count II of its amended complaint, at least beyond the pleadings stage, to make its argument as to how Discover can in fact avoid the declaratory judgment entered against it by raising additional policy defenses never raised or preserved, including its SFR argument.  Genuine Parts therefore filed its answer and affirmative defenses to Count II of Discover's amended

---

[1] Discover makes this unprecedented argument under the guise of the SFR of the Discover Policy, which similar to any self-insured retention (SIR), requires an insured to defend itself for third-party claims asserted against the insured.  Genuine Parts believes this is the first time in the history of insurance coverage analysis and litigation that an insurer has ever attempted to interpret an insurance policy in this manner and openly argue in bad faith that an insured's SFR (or SIR) means that, by agreeing to an SFR for claims filed against it, than an insured has in effect waived its right to sue third parties who have caused damages to Genuine Parts or its employees.

2

complaint, a counterclaim for declaratory relief against Discover, and a request for declaratory relief in a crossclaim against AIM, including declarations of the following:

    a.    In the event any declaration is made that Genuine Parts owes indemnity to Discover under either the Discover Policy or the Indemnity Agreement, then AIM must indemnify Genuine Parts for all such amounts pursuant to the VMA;

    b.    AIM is subject to, and owes Genuine Parts, $100,000 under the Self-Insured Retention of the Harco Policy;

    c.    AIM must indemnify Genuine Parts for all attorney fees and costs/expenses incurred by Genuine Parts in the multiple declaratory judgment actions that have been filed as a result of AIM's breach of the VMA and damages incurred by Genuine Parts; and,

    d.    For all such other and further relief necessary and as the Court deems just and proper.

(See Genuine Parts' crossclaim, Document 93, p. 22).

AIM now has filed a motion to dismiss the requested Declaration a., although its request for relief for unexplained reasons requests the dismissal of all declarations. AIM's motion to dismiss requests the dismissal of Declaration a. on two bases: (1) the intent of the VMA precludes AIM from being responsible for what it agreed to be responsible, i.e., all claims, losses, and liabilities resulting from AIM's negligent maintenance and breach of the VMA, and (2) Genuine Parts' crossclaim for indemnity under the VMA is contrary to this Court's Memorandum and Order which did not even address the VMA.

In addition to those arguments having no merit as set forth herein, in making its request to dismiss the entirety of the crossclaim, AIM obscures the reality that Genuine Parts' crossclaim does not only address AIM's indemnity obligation under the VMA for

losses and liabilities caused by AIM, and that it also addresses AIM's obligations to Genuine Parts for the underlying judgment under the Self-Insured Retention ("SIR") of its own insurance policy with Harco National Insurance Company ("the Harco Policy") (Declaration b.), and that the VMA also requires AIM to pay the attorney fees and expenses involved with Genuine Parts seeking its indemnity rights under the VMA against AIM (Declaration c.), neither of which are the subject of AIM's motion to dismiss. AIM's request to dismiss all requests for relief, while only addressing one of the requests, is telling and unfortunately is not unique in this litigation.[2]

AIM's motion to dismiss Genuine Parts' crossclaim not only requests that AIM be allowed to breach its indemnity agreement with Genuine Parts as was agreed in the VMA, but it also misrepresents the affect of this Court's previously issued Memorandum and Order.

## II.  BACKGROUND FACTS

A brief history of the VMA and background facts should be helpful to address the issues before this Court.  In the VMA (Document 93, Exhibit B), AIM agreed to provide the maintenance for Genuine Parts' vehicles, including maintenance for the vehicle which the jury found AIM to have negligently maintained and to have breached the VMA in maintaining, both of which were determined to be the cause of the underlying

---

[2] This misleading tactic of requesting the dismissal of all claims of Genuine Parts in a motion to dismiss which only raises issues with fewer than all asserted claims also was utilized by Discover in its motion to dismiss Genuine Parts' counterclaim.  Discover has advised it now has assumed control of the defense of AIM in the underlying litigation.  As a result, Discover, and now AIM, both have the common goal of defeating the underlying judgment and Discover's obligation to pay for it as declared in the PA State Declaratory Judgment, and perhaps this is the cause of this common defense approach which forces Genuine Parts and this Court to spend more time and expenses addressing that tactic.

accident and death of Mr. Walters, and the damages and losses incurred by Genuine Parts.

The VMA contains the relatively standard language in indemnity provisions which provide for mutual indemnity when one party's negligence causes losses and liabilities to the other.  Towards that end, the actual terms of the VMA, and the intent as clearly determined from those terms, required AIM to indemnify Genuine Parts for all claims, losses, and liabilities Genuine Parts incurred as a result of AIM's negligence or breach of the VMA (VMA Addendum, para. 16 and 25), and Genuine Parts in turn to indemnify AIM for any liabilities AIM incurred as a result of Genuine Parts' own use or maintenance of the vehicle.  (<u>See</u> VMA, para. 5 and Addendum para. 25).[3]  Genuine Parts also agreed in the VMA, as also is relatively standard, to include AIM as an additional insured under Genuine Parts insurance policy (the Discover Policy), and AIM at the same time carried its own insurance for its own negligent acts through its Harco Policy.  In conformance with the VMA, AIM was an additional insured on the Discover Policy as all now acknowledge, "<u>but only for damages which you [Genuine Parts] agreed to provide in the contract [the VMA]</u>." (Discover's Amended Complaint, Exhibit A, Document No. 38-2, p. 5 of 40, Blanket Additional Insured Endorsement).  Because the VMA did not require Genuine Parts to indemnify AIM for damages caused by AIM's negligence, the Discover Policy specifically excluded any coverage to AIM for the underlying judgment against AIM.

---

[3]Georgia law is identical to Pennsylvania law in that an indemnitee has no right to indemnity for its own negligence unless there is a written agreement specifically indicating that the indemnitor will indemnify the indemnitee for the indemnitee's own negligence.  It is undisputed that there is no requirement in the VMA that Genuine Parts indemnify AIM for losses caused by AIM's negligence, and summary judgment was entered in favor of Genuine Parts and against AIM in the underlying lawsuit on AIM's contractual indemnity claims against Genuine Parts.

Prior to, and in, the PA State Declaratory Judgment Action, Discover always acknowledged, argued, and pled that coverage was not owed to AIM under the Discover Policy because the only claims asserted against AIM in the underlying litigation were for AIM's own negligence and breach of the VMA, and not for any liability to AIM arising from Genuine Parts' negligence or fault.  In the PA State Declaratory Judgment Action, the trial court nonetheless declared that <u>Discover</u> did owe AIM a defense and indemnity to AIM for Genuine Parts' underlying litigation and judgment against AIM, a clearly erroneous ruling which Discover appealed.[4]  Discover then created a scheme to save its own money and expenses, to the detriment of its insured Genuine Parts, by withdrawing its appeal without notice to Genuine Parts and then claiming that the PA State Declaratory Judgment entered against it which Discover allowed to become final by dismissing its appeal only harmed its insured, Genuine Parts.[5]  (<u>See</u> Document 93, Genuine Parts' answer and affirmative defenses incorporated into Genuine Parts' crossclaim, para. 89, 91, 113).

Genuine Parts' crossclaim against AIM requests, <u>inter alia</u>, a declaration that, if Discover somehow could avoid the PA State Declaratory Judgment entered against it

---

[4] Genuine Parts had no standing to appeal the PA State Declaratory Judgment, as the order was not adverse in any manner as to Genuine Parts.

[5] The reasons will be explained in the dispositive motions and separate bad faith litigation, but in brief Discover ignored the declaratory judgment for over a year while AIM appealed the underlying judgment through a defense provided by the Harco Policy.  AIM's threats of bad faith against Discover for ignoring that judgment were real and subjecting Discover to significant liability.  If Discover assumed the defense as ordered, it would then be paying for both the past and future defense of AIM in the underlying litigation, and be responsible for the underlying judgment which now approximates $2 million, all in a situation where coverage was never owed.  It is believed that Discover intentionally chose to make this new SFR policy defense argument in the Georgia federal court because it knew it could not be successful because of waiver and estoppel principles in litigating these additional coverage issues in the PA State Declaratory Judgment Action, and Discover intentionally chose to hold its own interests over that of Genuine Parts by dismissing its appeal of the admittedly incorrect PA State Declaratory Judgment and then claiming that the judgment it just made final by withdrawing its appeal only detrimentally affected its insured, Genuine Parts.

6

and cause enough confusion such that the SFR could somehow be applied to make Genuine Parts defend a company which Genuine Parts sued, and somehow pay itself for the judgment which Genuine Parts obtained against AIM, then AIM would be responsible for that claim, liability, and loss pursuant to the express terms of the VMA which require AIM to indemnify Genuine Parts for all "claims, suits, proceedings, costs, losses, expenses, damages and liabilities, including but not limited to attorneys' fees and courts costs, claimed by any person, organization, association or other entity ("Losses") with respect to:" (a) all injuries and damages as a result of the act of AIM or its maintenance of the subject vehicle, and (c) any claim based on AIM's failure to comply with the terms of the VMA. AIM used the VMA in its attempt to obtain coverage from Discover, but now wants to ignore its indemnity obligation of the VAM and the overall intent to have the party who caused a claim or loss be ultimately responsible for them.

AIM's motion to dismiss Genuine Parts' crossclaim has no merit, as the VMA clearly applies to require AIM to indemnify Genuine Parts for any and all claims, losses, and liabilities caused by AIM's negligence and breach of the VMA. To the extent AIM is sincere with its "intent" argument which is contrary to the express terms of the VMA, then discovery would need to occur to permit a record to be developed as to AIM's now distorted reference to the intent behind the VMA.

On AIM's second point in its motion to dismiss, AIM disingenuously argues that this Court's Memorandum and Order allow AIM to avoid its indemnity obligation of the VMA and have a party who has no responsibility for the damages at issue, Genuine Parts, to bear the burden of AIM's negligence in the absence of any agreement

requiring that extreme result and in the face of the VMA agreement that was intended to make AIM responsible for the losses and liabilities it alone created.  In this Court's Memorandum and Order, this Court simply ruled that Discover cannot re-litigate the PA State Declaratory Judgment entered against it, and therefore AIM's crossclaim against Genuine Parts which was based upon Discover's now dismissed Count I claim against AIM was moot.[6]  No part of this Court's Memorandum and Order did preclude, or could preclude under the law, Genuine Parts from seeking its contractual right to indemnity for this additional claim, liability, and loss allegedly owed by Genuine Parts as a result of and with respect to AIM's negligence and breach of the VMA.

### III.  STANDARD OF REVIEW

A complaint (or crossclaim) can only be found to be insufficient under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(modifying long standing 12(b)(6) standards set out in Conley v. Gibson, 355 U.S. 41 (1957)). (See also Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)(clarifying that the Twombly standard is not limited to anti-trust context)).  When a party "make[s] a showing rather than a blanket assertion of an entitlement to relief" of a plausible claim, it must be permitted to proceed. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3rd Cir. 2008).  In other words, the pleading only must supply enough facts to raise a reasonable expectation that discovery will reveal evidence supporting its claim.  Id. at 232 (quoting Twombly, 550 U.S. at 556, n.3).

---

[6] AIM's crossclaim also was the subject of Genuine Parts' pending motion to dismiss. (Documents 72 and 73).  AIM already asserted the same breach of contract claim against Genuine Parts in the underlying litigation, and AIM's attempt to re-litigate that same breach of contract claim in this Court was ill-fated and subject to a dismissal.

8

The United States Court of Appeals for the Third Circuit has instructed:

> When presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3rd Cir. 2009). Genuine Parts' crossclaim against AIM exceeds this pleading standard.

## IV. ARGUMENT

### A. The VMA Clearly Applies to All Claims, Losses, and Liabilities Caused by AIM, and Discovery Would be Necessary on the Intent Argument Made by AIM if the Intent is Not Clear from the Express Terms of the VMA.

AIM argues that the intent of the VMA is something other than the express terms of the VMA itself, and that such intent can be determined by an argument made in a motion to dismiss without any discovery. Contrary to AIM's argument, however, the terms of the VMA, as well as the history and intent behind it, make it more than clear that AIM and Genuine Parts both agreed to be responsible for <u>all</u> claims, losses, liabilities, etc. that each created. The indemnity provision of the VMA does not carve out any exception to this indemnity obligation, as AIM now argues. If the claim, loss, or liability resulted from AIM's negligence or breach of the VMA, then AIM is ultimately responsible for it under the VMA.

9

Georgia indemnity law is no different than Pennsylvania law in that an indemnitor will never be required to indemnify an indemnitee for the indemnitee's own negligence unless that extreme fault shifting mechanism is specifically agreed to in the contract. <u>Ryder Integrated Logistics Inc. v. BellSouth Telecommunications, Inc.</u>, 281 Ga. 736, 642 S.E.2d 695 (2007); <u>Service Merchandise Co. v. Hunter Fan Co.</u>, 617 S.E.2d 235, 238 (Ga. App. 2005). However, when the indemnitor agrees to indemnify the indemnitee for all damages and losses <u>caused by that indemnitor</u>, then the court applies, has no hesitancy in applying, and actually encourages, that provision to follow the intent of the parties and to allow the contractually agreed and equitable result of the tortfeasor paying for all damages and losses caused by its fault.[7] <u>Ryder</u>, 281 Ga. 737-38; <u>JNJ Found. Specialists, Inc. v. D. R. Horton Inc.</u>, 311 Ga. App. 269, 717 S.E.2d 219 (Ga. Ct. App. 2011).

Here, the VMA specifically provides as follows with regard to AIM's indemnity obligation to Genuine Parts:

> f.   NATIONALEASE INDEMNIFICATION.  NationaLease [AIM] will indemnify Customer [Genuine Parts] and its agents, servants and employees and hold them harmless from any and <u>all claims, suits, proceedings, costs, losses, expenses, damages and liabilities, including but not limited to attorney's fees and court costs, claim by any person, organization, association or entity ("Losses") with respect to</u>:
>
> a.   Any and all injuries (including death) or property damage sustained by such party as result of the act of

---

[7] AIM's argument that the indemnification agreement at issue must be strictly construed against indemnification is false. That rule of law applies when one party is seeking indemnity for its <u>own</u> negligence. The Supreme Court of Georgia recognizes, like perhaps all states, that the law is in fact reluctant to place fault on the party that is <u>not at fault</u>, as AIM requests here contrary to its agreement in the VMA. See <u>Ryder</u>, <u>supra</u> ("Public policy is reluctant to cast the burden of negligent actions upon those who are not actually at fault.").

{P1271723.1}

> NationaLease or employees of NationaLease, or as result of the maintenance of the Vehicles performed by NationaLease or its employees; and
>
> . . .
>
> b.  <u>Any claim</u> based upon NationaLease's failure to comply with the terms and provisions of this agreement.
>
> <u>Indemnity provided by NationaLease under this Section 5 shall apply to Losses only to the extent said Losses are caused by NationaLease</u>.

(emphasis added). In addition to the above terms, the VMA also provides with regard to the attorney fee and expense declaratory relief crossclaim made by Genuine Parts against AIM:

> 15. ATTORNEY'S FEES AND COSTS: Each party shall pay the other party any and all costs and expenses incurred by such party to protect its interest and/or to enforce any term or provision of this Agreement including, but not limited to, reasonable attorney fees and court costs.

(Document 93, Exhibit B - VMA, Addendum para. 25). How AIM believes it can avoid being responsible for the alleged claim, loss, and liability, and attorney fees and expenses, that Discover seeks to impose upon Genuine Parts with respect to AIM's negligence and breach of the VMA as was determined by the jury is unimaginable after any review of the VMA.

The intent of both AIM and Genuine Parts cannot be clearer from the terms of the VMA. Based on the terms of the VMA, and the claims being advanced in this Court, this Court could, and it is expected ultimately will, enter a ruling as a matter of law requiring AIM to indemnify Genuine Parts for this claim, loss, or liability resulting from AIM's negligence and breach of the VMA, which would include any inconceivable payment by

11

Genuine Parts to itself for the underlying judgment it has against AIM through the novel and unsupported SFR argument now being made by Discover. AIM freely negotiated the VMA with Genuine Parts, and agreed to be responsible for <u>all</u> claims, losses, and liabilities that resulted from AIM's negligence and breach of the VMA, just like Genuine Parts freely agreed to indemnify AIM for all losses caused by Genuine Parts. There was no exclusion in the indemnity agreement for any one type of claim, loss, or liability as now argued by AIM, and there can be no question that the alleged claim, loss, and liability now being claimed by Discover, albeit unprecedented, resulted from AIM's negligence and breach of the VMA.

This Court can and must ascertain the intent of the VMA by its express terms, and the unequivocal terms of the VMA require AIM to defend and indemnify Genuine Parts for the waived claim being made by Discover. AIM's first basis in its motion to dismiss Genuine Parts' crossclaim has no merit, and a dispositive motion on this issue will be filed against AIM on this issue following discovery on the intent issue now being raised by AIM.

    **B.** **This Court's Memorandum and Order Does Not Preclude Genuine Parts from Obtaining the Required Indemnity from AIM under the VMA**.

AIM's second basis to attempt to dismiss Genuine Parts' entire crossclaim is that this Court's Memorandum and Order (Document 87) somehow precludes Genuine Parts from seeking the indemnity rights which both AIM specifically agreed to provide to Genuine Parts in the VMA. This Court, however, made no ruling of any type that would preclude Genuine Parts from asserting its contractual indemnity claim against AIM. The

fact that the alleged claim, loss, and liability to Genuine Parts being claimed by Discover is through the SFR of the Discover Policy does not in any manner affect Genuine Parts' right to indemnity from AIM for that claim, loss, or liability which arose only because AIM's negligence and breach of its vehicle maintenance responsibilities caused a fatal accident and subsequent litigation. Additionally, this Court's dismissal as moot of AIM's crossclaim against Genuine Parts does not in manner impact Genuine Parts' indemnity claim against AIM for this additional claim, loss, and alleged liability which also arises from AIM's negligence and breach of the VMA.

AIM's crossclaim which was dismissed as moot during the pendency of Genuine Parts' motion to dismiss that crossclaim specifically sought a declaration that AIM is not subject to the terms of the <u>Discover Policy</u>, specifically the SFR Endorsement (Document 43, para. 90, 91, and 92). The completely separate agreement, the VMA and its indemnity obligations, were never at issue in this Court's Memorandum and Order. Under the law, additional insureds such as AIM stand in the shoes of the named insured when interpreting insurance policy provisions, and additional insureds are subject to the same terms and conditions of the insurance policy which otherwise would be applicable to the named insured. AIM's crossclaim understandably sought a declaration that the Discover Policy provision relating to the SFR did not apply to it, as Discover waived that issue by not raising it in the PA State Declaratory Judgment Action. When this Court dismissed Discover's request for declaratory relief against AIM, it specifically recognized that "Discover should have presented all arguments to counter AIM's pursuit of defense and indemnify before the Court of Common Pleas of Washington County; its failure to do so does not entitle it to a second bite at the apple"

and that Discover had "an obligation to fully litigate any and all claims and defenses at that time." (Document 87, pp. 7-8).

This Court's ruling that AIM was not subject to the declaratory relief requested by Discover does not mean that the VMA, or the indemnity provisions contained therein, no longer apply to AIM for claims, losses, and liabilities incurred by Genuine Parts as a result of AIM's negligence and breach. It simply meant that AIM would not be called upon to stand in the shoes of Genuine Parts and face the same meritless SFR argument against it that Discover is now pursuing against Genuine Parts.

AIM provides no argument of any type to even try to support its argument that this Court's Memorandum and Order somehow barred Genuine Parts' separate right to contractual indemnification from AIM if Discover somehow was successful on its SFR claim which came about only because AIM's negligence and breach of the VMA caused the underlying accident and death of Mr. Walters. It seems by the result being requested by AIM that AIM may be attempting to suggest that collateral estoppel applies, which it could not because the VMA was not litigated to any decision in this Court, but AIM has not set forth any actual basis or rationale as to how it could avoid its indemnity obligation under the VMA by this Courts' ruling on Genuine Parts' motion to dismiss Discover's amended complaint. Because there is no support for the relief requested by AIM's motion to dismiss Genuine Parts' crossclaim, and because AIM again improperly requests the dismissal of the entirety of Genuine Parts' crossclaim on this one unsupported issue, AIM's motion to dismiss, respectfully, should be denied.

{P1271723.1}

## V.  CONCLUSION

Genuine Parts' crossclaim against AIM arises out of the same transaction or occurrence that is the subject matter of Count II of Discover's amended complaint which seeks a declaration, albeit directly contrary to that declaratory judgment already issued against Discover in the PA State Declaratory Judgment, i.e., that Genuine Parts must incur a loss and liability resulting from AIM's negligence and its breach of the VMA.  If that result could somehow be reached, then there can be no dispute from a reading of the indemnification provisions of the VMA that AIM, which caused the accident, death of Mr. Walters, and damages to Genuine Parts which resulted in the filing of this claim, owes a defense and indemnity for any such claim, loss, or liability incurred by Genuine Parts with respect to AIM's negligence and breach of the VMA.  AIM's conclusory argument that this Court's Memorandum and Order bars Genuine Parts from asserting its indemnity rights against AIM has no support, either actual or cited by AIM, and AIM's motion to dismiss, respectfully, should be denied.

>Respectfully submitted,
>MEYER, DARRAGH, BUCKLER,
>BEBENEK & ECK, P.L.L.C.
>
>
>By:  /s/ Paul R. Robinson
>    PAUL R. ROBINSON, ESQUIRE
>    PA I.D. No. 65581
>    600 Grant Street, Suite 4850
>    Pittsburgh, PA  15219
>    Telephone:  (412) 261-6600
>    Fax:  (412) 471-2754
>    Email:  probinson@mdbbe.com
>
>    Counsel for Genuine Parts Company t/d/b/a NAPA Auto Parts

## PROOF OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served upon all parties on the date and in the manner listed below:

|        |                                          |
|--------|------------------------------------------|
| _____ | First Class Mail, Postage Prepaid        |
| _____ | Certified Mail - Return Receipt Requested|
| _____ | Hand Delivery                            |
| _____ | Facsimile Transmission                   |
| _____ | Overnight Delivery                       |
| _____ | Electronic Mail                          |
| __X__  | CM/ECF Filing                            |

at the following address:

Alan S. Miller
amiller@psmn.com
R. Brandon McCullough, Esquire
bmccullough@psmn.com
Picadio, Sneath, Miller & Norton
Four Gateway Center
444 Liberty Avenue, Suite 1105
Pittsburgh, PA 15222
*(Counsel for Discover Property & Casualty Insurance Company)*

Christopher M. Jacobs, Esquire
Burns White, LLC
Four Northshore Center, 106 Isabella Street
Pittsburgh, PA 15212
cmjacobs@burnswhite.com
*(Counsel for AIM Leasing Company d/b/a AIM NationaLease and Harco National Insurance Company)*

MEYER, DARRAGH, BUCKLER,
BEBENEK & ECK, P.L.L.C.

Date: October 24, 2016        /s/ Paul R. Robinson
                              PAUL R. ROBINSON, ESQUIRE

{P1271723.1}