IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY, | ) Civil Action No. 15-998 <br> ) Judge Cathy Bissoon <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) |
| AIM LEASING COMPANY d/b/a AIM NATIONALEASE and GENUINE PARTS COMPANY d/b/a NAPA AUTO PARTS, | ) <br> ) <br> ) <br> ) |
| Defendants, | ) <br> ) |
| v. | ) <br> ) |
| HARCO NATIONAL INSURANCE COMPANY, | ) <br> ) <br> ) |
| Third-Party Defendant. | ) |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS GENUINE PARTS COMPANY'S THIRD-PARTY COMPLAINT PURSUANT TO RULE 12(b)(6)**

NOW, comes Third-Party Defendant Harco National Insurance Company ("Harco"), by and through its attorneys, Burns White LLC, and files a Reply Brief in Support of Motion to Dismiss Genuine Parts Company's Third-Party Complaint Pursuant to Rule 12(b)(6).

Proving that this matter relates to a dispute between Genuine Parts and its insurance company—Discover—much of Genuine Parts' briefing on Harco's Motion to Dismiss is comprised of complaints and frustration directed toward Discover.

When Genuine Parts attempts to respond to Harco's arguments, it artificially manufactures issues that do not exist, and then responds to them. Indeed, the crux of Genuine Parts' position appears to be wholly premised on pretending that there exists outstanding questions as to whether the Harco policy provides coverage to AIM with respect to the

Underlying Tort Action and how the Harco coverage afforded to AIM interacts with the Discover coverage afforded to AIM. In this respect, Genuine Parts goes as far as proclaiming that there has been no acknowledgement of the application of the Harco policy with respect to the Underlying Tort Action and even declares that "Harco apparently disputes its priority of coverage with Discover…" (See Genuine Parts' Response Brief [ECF Doc. No. 127] at 4) (emphasis in original).

The problem with Genuine Parts' pronouncements, however, is that they are totally wrong, and as a result, Genuine Parts' entire position crumbles. Harco—no less than four times in its Opening Brief—affirmatively acknowledged that coverage is afforded to AIM on an excess basis under the Harco policy in relation to the coverage afforded to AIM under the Discover policy on a primary basis. (See Harco's Opening Brief [ECF Doc. No. 122] at 6, 7, 8 and 9.)

In attempting to litigate a case against Harco that does not exist, Genuine Parts completely discounts that this is a case where two insurers agree as to its obligations relative to their mutual insured (i.e., AIM), and in this regard, Genuine Parts conspicuously ignores that: (1) the "other insurance" provisions contained in the respective policies work congruently with each other to render Discover's coverage to AIM primary and Harco's coverage to AIM excess, and (2) Discover has taken affirmative steps to acknowledge its primary obligation based on the operation of the respective "other insurance" provisions by paying for AIM's past and ongoing defense costs in connection with the Underlying Tort Action. (See Harco's Opening Brief [ECF

Doc. No. 122] at 6-8.) Genuine Parts does not even attempt to substantively address these points, because it cannot.[1]

As noted in Harco's Opening Brief, Genuine Parts' Third-Party Complaint against Harco is nothing more than the embodiment of a thinly-veiled hope that it can somehow trigger and creep into a discussion regarding the insurance available to a third party (AIM) through that third party's insurance company (Harco) and attempt to reshuffle the layers of coverage afforded to that third party, in pursuit of its overarching objective to escape its SFR obligation under its own insurance policy.

Of course, as discussed fully in Harco's Opening Brief, Genuine Parts has no standing to assert claims against a third party's insurer to seek a declaration regarding the application, construction or interpretation of that other party's insurance policy. (See Harco's Opening Brief [ECF Doc. No. 122] at 3-5.) Despite declaring that "the law" is "directly contrary" to this fundamental point, Genuine Parts is only able to cite to *dicta* in an unreported case on the basis that although that case was dismissed on a Rule 12 motion because of a lack of standing to sue a third party's insurer, the dismissal was "without prejudice." See Shaw v. McGuinn, 2015 WL 5178128 (Sept. 4, 2015). But even assuming that Shaw's *dicta* is instructive, Shaw is factually inapposite. The case before the court in Shaw was the tort action itself, where the third party insureds failed to defend, defaults had been entered against them, and motions for default judgments were pending. Id. at *4 n. 1. The plaintiffs attempted to bring the third parties'

---

[1] Genuine Parts instead tries to frame its arguments in terms of "if" the Discover policy applies to AIM. As the Court is well aware, AIM's insured status under the Discover policy has long been decided and established. In the face of this irrefutable fact, Genuine Parts points to its usual default argument (that is, the VMA), suggesting that the language contained in the VMA—instead of the language of the actual insurance policies—somehow dictates coverage obligations. This is anathema to basic insurance law. See, e.g., Twp. of Springfield v. Ersek, 660 A.2d 672 (Pa. Commw. Ct. 1995) (citing Transport Indem. Co. v. Home Indem. Co., 535 F.2d 232 (3rd Cir.1976) (confirming that an insurer's coverage obligations are governed solely by terms of the insurance policy, without reference to or consideration of a separate contract concerning an insured's agreement to procure insurance for another).

insurer into the tort action on the basis that the insurer had issued a notice of cancellation relative to the insurance policy and the plaintiffs wanted to challenge the sufficiency of the notice.  Id. at *2.  The Shaw court recognized that the plaintiffs had no standing to bring a direct claim against the third parties' insurer, but after discussing how an indirect right of garnishment may exist inasmuch as a judgment were ultimately entered, the court dismissed the Complaint as to the insurer without prejudice.  (See id. at *3:  "'The only way Plaintiff, once possessed of the judgment, can come at the Defendant is *indirectly* on the basis of a right of the insured against its insurer through the device of garnishment.'") (citation omitted) (emphasis added).  None of those circumstances exists here whatsoever.

For all of the reasons set forth in Harco's Opening Brief, the Court has subject matter jurisdiction over this action without Harco.  (See Harco's Opening Brief [ECF Doc. No. 122] at 8-10.)  The Court can decide that Genuine Parts' SFR contained in its own insurance policy with Discover either applies to Genuine Parts, or it does not.  That is the question before the Court, and Harco's absence in this case does not affect the Court's ability to accord complete relief on this issue to the existing parties.  Genuine Parts' Third-Party Complaint should be dismissed.

    Respectfully submitted,

    BURNS WHITE LLC

    By /s/  Christopher M. Jacobs
        Christopher M. Jacobs
        PA ID #89092
        Four Northshore Center
        106 Isabella Street
        Pittsburgh, PA  15212
        *(Attorneys for AIM Leasing Company d/b/a AIM NationaLease and Harco National Insurance Company)*

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on the 13th day of January 2017, the within **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS GENUINE PARTS COMPANY'S THIRD-PARTY COMPLAINT PURSUANT TO RULE 12(b)(6)** was filed electronically. Notice of this filing will be sent to all Parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Christopher M. Jacobs